UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JORGE BRETONECHE CANALES (A No. 241 805 726),

Petitioner,

v.

WARDEN OF MESA VERDE DETENTION FACILITY, et al.,

Respondents.

No. 1:25-cv-1946 DC CKD P

FINDINGS AND RECOMMENDATIONS

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). For reasons which follow, the court recommends that the first amended petition for writ of habeas corpus (ECF No. 11) be granted and petitioner be released from custody.

/////

/////

/////

/////

/////

1

I. Facts[1]

Petitioner is a native of Peru. He entered the United States near El Paso on or about July 18, 2022. Petitioner was detained and ultimately released into the United States when ICE officials determined that petitioner was not a flight risk, nor a threat to others. Removal proceedings were commenced and petitioner was ordered to appear before an immigration judge in Los Angeles on April 6, 2023. ECF No. 11-1 at 2.

Between April and September, 2025, petitioner worked with Department of Homeland Security (DHS) authorization in Connecticut. In August, 2025, petitioner obtained authorization from ICE to travel to California for an immigration hearing. Petitioner left Connecticut by bus on September 10.

On September 16, an employee from Connecticut ICE notified petitioner that she was receiving malfunction notifications from his GPS monitoring device. The employee directed petitioner to report to an ICE office the following day.

The following day, petitioner reported to an ICE office in Bakersfield where he was advised that he needed to have his monitoring device replaced. He was directed to visit a different office in Bakersfield on September 18. Petitioner did as advised and was arrested. When petitioner asked why he was being arrested, officers held out a piece of paper and stated that petitioner had eleven infractions of his Alternatives to Detention Program. Petitioner was not permitted to review the alleged infractions as he was never allowed to examine the paper closely. Other than the notice he received from the Connecticut office as to the malfunction of his monitoring device, petitioner is not aware of any instance where ICE received any notification that petitioner had not complied with monitoring or reporting requirements and any noncompliance was neither willful, nor intentional. There is nothing in the record suggesting that is not the case.

/////

---

[1] The facts are as alleged by petitioner in his first amended petition. The facts are supported by the exhibits provided by petitioner. Respondent does not object to any of the facts alleged and does not point to anything suggesting any fact alleged is not correct.

2

Petitioner's next removal / asylum proceeding is March 25, 2026.  Petitioner has no criminal record.  Petitioner has been in custody since his September 18, 2025, arrest.

II.  Standard for Habeas Relief.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III.  Violation of Fifth Amendment

A.  Liberty Interest

Petitioner contends that his being detained before a determination that his is a flight risk or danger to the community at a hearing violates his Fifth Amendment right to not have his liberty taken away without due process.[2]  Generally speaking, the Due Process Clause applies to all persons within the "geographic borders" of the United States.  Id. at 693.  "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."  Plyler v. Doe, 457 U.S. 202, 210 (1982).  Due process protection applies to aliens who have "passed through our gates." Shaughnessy v. U.S., 345 U.S. 206, 212 (1953).  Even in the immigration context, government detention is permissible "only 'in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding

/////

---

[2]  Because the court finds petitioner is entitled to the relief he seeks for a violation of the Fifth Amendment, the court need not address his other claims.

3

physical restraint.'" Kong v. United States, 62 F.4th 608, 616 (1st Cir. 2023) (quoting Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey[ v. Brewer, 408 U.S. 471 (1972)]." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, the parolee's "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in "continued liberty." Id. at 481-84.

The regulations authorizing ICE to release a noncitizen from custody into the United States require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

In light of all of the foregoing, the court finds that petitioner's initial release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk or dangerous. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on

4

governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest).  "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody he has a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Respondents argue that petitioner's re-arrest and detention were mandated by statute because although petitioner was physically admitted into the United States, he remains an "applicant for admission" under 8 U.S.C. § 1225(b) not entitled to due process protection.  In DHS v. Thuraissigiam, 591 U.S. 103 (2020) the Supreme Court found that an alien arrested near the border around time of his illegal entry, detained, and ordered removed was not a person present in the country and therefore was not entitled to due process protection.

While petitioner still may be an "applicant for admission" as that term is defined in 8 U.S.C. § 1225(b), he has also "passed through our gates," Shaughnessy, 345 U.S. at 212, is a person within the border of the United States entitled to Due Process under Zadvydas and is not subject to an order of removal.  These facts distinguish him from Supreme Court precedent as to persons detained at or near their time and place of entry and / or ordered removed.  The undersigned rejects the premise that petitioner, who was released into the county, has never been charged with a crime, has not been ordered removed, and has ties to his community after his over three year presence in the United States, does not possess the most fundamental of rights not to be deprived of life, liberty or property by the executive for any reason the executive sees fit.  See Jennings v. Rodriguez, 583 U.S. 281, 332 (2018) (Breyer, J., dissenting) ("Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries.").  Denying petitioner due process protection because he is technically an "applicant for admission" as opposed to an "admittee" as those terms are defined in immigration law, "subordinates fact to fiction, [and] disregards the plain meaning of the Due Process Clause, which promises its protection to every person within the United States."  Rincon v. Hyde, No. 15-12633 BEM, 2025 WL 3122784, * 2 (Dist. of Mass., November 7, 2025) (internal quotation omitted).

"Indeed, to apply the entry fiction doctrine to a case like Petitioner's is to set aside the plain meaning of the Fifth Amendment altogether." Id. at * 7.

B.  Process Due

Next, the Court turns to what procedures are necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a paramount interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.).

"The risk of an erroneous deprivation [of liberty] is high" without any required process and, in particular, when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Nothing suggests the persons who decided to detain petitioner made any attempt to determine whether petitioner was dangerous or risk of flight.  Most likely, petitioner was detained due to a change in ICE policy which does not include a determination of either of those factors.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Id. Further, such hearings provide help to insure ICE officers act within the boundaries of the law which is within ICE's interest.

In light of the foregoing the court finds Mathews factors dictate that petitioner is entitled to a bond hearing finding that results in a legal justification for detention. Further, "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V. v. Wofford, 1:25-cv-2381 KES SAB, 2025 WL 3083934 at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases). Nothing in the record before the court suggests there were any "urgent concerns" for detaining petitioner without a hearing and thus "a pre-deprivation hearing [was] required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The amended petition for writ of habeas corpus (ECF No. 11) be GRANTED.

2. Petitioner be released from custody.

3. That the terms of release be as follows:

A. Any additional restrictions on petitioner's release from custody cannot be imposed unless determined necessary at a pre-deprivation / custody hearing.

B. Petitioner cannot be re-detained by respondents absent compliance with constitutional protections, including a minimum of seven-days' notice and a hearing

7

before a neutral fact-finder where respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future; or (b) respondents demonstrate by clear and convincing evidence that petitioner poses a danger to the community or a flight risk.  At any such hearing, petitioner shall be allowed to have his counsel present.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven (7)** days any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within **seven (7)** days of the filing of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 18, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
cana1946.mer

8